United States District Court
Southern District of Texas
ENTERED
August 21, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **GLENDA XIOMARA GOMEZ GODINEZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-01420** |
| | § | |
| **ORLANDO PEREZ, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

## ORDER

Pending before the Court is Petitioner Glenda Xiomara Gomez Godinez's ("Petitioner" or "Ms. Gomez Godinez") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Request for Order to Show Cause, (Dkt. 1), and Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. 3), challenging the lawfulness of her detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED**. Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. 3), is **DISMISSED AS MOOT**. Respondents' Response to Petition for Writ of Habeas Corpus and Response to Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction and Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody **IMMEDIATELY**, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release on or before **Tuesday, August 25, 2026.**

## Background

### A. Factual Background

Ms. Gomez Godinez is a native and citizen of Honduras who has lived in the United States for nearly three years. (*See* Dkt. 1 at 4.) She entered the United States in November of 2023 and was subsequently released on her own recognizance into the United States. (*Id.* at 4–5.) While living in the United States, on February 17, 2026, Ms. Gomez Godinez gave birth to her United States citizen daughter in Brownsville, Texas. (*Id.* at 5.) Shortly after giving birth, Ms. Gomez Godinez contacted Friendship of Women, Inc., seeking emergency shelter due to emotional, verbal, and psychological abuse by her partner. (*Id.*) Friendship of Women, Inc., contacted Ms. Gomez Godinez when a shelter became available on March 16, 2026, but she was unable to leave safely. (*Id.*) On March 23, 2026, Ms. Gomez Godinez was arrested and charged with a misdemeanor that was later dismissed on June 4, 2026. (*Id.*) She was separated from her approximately five-week-old daughter who was breastfeeding and last seen with the abusive partner. (*Id.*) Thereafter, Ms. Gomez Godinez was taken into ICE custody at the Laredo Processing Center on June 5, 2026. (*Id.*) On August 5, 2026, her counsel submitted an urgent humanitarian parole request notifying ICE that Ms. Gomez Godinez is postpartum and nursing and requesting electronic monitoring as a condition of release, but no substantive response was received. (*Id.* at 2–3.) Ms. Gomez Godinez has remained in detention during her ongoing removal proceedings. (*Id.* at 6.)

### B. Procedural Background

On February 6, 2026, the United States Court of Appeals for the Fifth Circuit addressed the dispute over the statutory interpretation of 8 U.S.C. § 1225(b)(2)'s mandatory detention provision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) ("*Buenrostro-Mendez*"). In the precedential decision, the Fifth Circuit determined that noncitizens apprehended in the

interior who entered without inspection are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore are not entitled to bond hearings under 8 U.S.C. § 1226(a). *Id.* at 498. The decision was limited to the statutory interpretation of the applicable provisions and left unresolved other claims brought by petitioners challenging their mandatory detention, including constitutional questions under the Due Process Clause. *Id.* at 508. Subsequently, on July 2, 2026, the Fifth Circuit issued a decision in *Sosnava Rodriguez v. Ortega*, 2026 WL 1906557 (5th Cir. July 2, 2026) ("*Sosnava Rodriguez*"), holding that noncitizens detained under 8 U.S.C. § 1225(b)(2)(A) may not be detained for longer than ninety days without a bond hearing based on constitutional concerns. On July 10, 2026, the Fifth Circuit issued an *en banc* rehearing order on its own motion. *Sosnava Rodriguez v. Ortega*, 2026 WL 2014647 (5th Cir. July 10, 2026). The Fifth Circuit also vacated the July 2, 2026 ruling in *Sosnava Rodriguez*. *Id*. At this time, therefore, *Sosnava Rodriguez* is pending a ruling by the Fifth Circuit sitting *en banc*.[1]

[1] Respondents argue that no relief should be granted to Petitioner based on Petitioner's due process claim because of the stay issued in *Sosnava Rodriguez*. (*See* Dkt. 9 at 10–11.) On July 21, 2026, the Fifth Circuit issued a stay of the three individual district court judgments in *Sosnava Rodriguez* pending rehearing *en banc*. 2026 WL 2104747, at *1 (5th Cir. July 21, 2026). The Supreme Court has recognized that an interim order granting a stay is "not conclusive as to the merits" and may "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *see also Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("[t]he stay order is not a ruling on the merits, but instead simply stays the District Court's injunction pending a ruling on the merits."); *U.S. Navy SEALs 1- 26 v. Biden*, 72 F.4th 666, 675 n.9 (5th Cir. 2023) (A stay does not "spawn binding legal consequences regarding the merits of [a] case." (quoting *Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020))). The Fifth Circuit's stay in *Sosnava Rodriguez* was issued without analysis. Accordingly, reading into the Fifth Circuit's stay "is an inherently speculative endeavor." *See Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1013 (S.D. Tex. 2025). Without clearer direction, the Court will not deny relief this Court deems meritorious solely because the district court judgments granting relief to individual habeas petitioners were stayed. *See, e.g., Camacho v. Dep't Homeland Security*, 2026 WL 2137156, at *2–3 (W.D. Tex. July 24, 2026); *Guerra Estrada v. Ybarra*, 2026 WL 2168090, at *1–2 (W.D. Tex. July 28, 2026); *Perozo-Mata v. Blanche*, 2026 WL 2195373, at *3 (S.D. Tex. July 27, 2026); *Rodriguez v. Blanche*, 2026

Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), and an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. 3), on August 11, 2026. Petitioner argues that her detention as a postpartum and nursing individual violates the *Accardi* Doctrine and the Fifth Amendment because Respondents have failed to comply with their own internal procedures under ICE Directive 11032.4, Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals ("the Directive"). (Dkt. 1 at 9–11.) Petitioner asks the Court to order her immediate release under reasonable noncustodial conditions. (*Id.* at 12.) The Court ordered Respondents to respond to Petitioner's Petition and Emergency Motion on or before August 14, 2026. (Dkt. 7.) Respondents filed a timely response arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) pursuant to *Buenrostro-Mendez* and, even assuming Petitioner is postpartum or nursing, that the Directive does not require her release from detention. (Dkt. 9.) Petitioner filed a timely reply to Respondents' response, arguing that Respondents' motion "rests on a factual premise now conclusively disproved by contemporaneous medical records, conflates mandatory detention without bond with DHS's separate statutory parole authority, and offers no competent evidence that ICE complied with Directive 11032.4." (Dkt. 11.)

## <u>Legal Standard</u>

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of

---

WL 2221493, at *14 (W.D. Tex. Aug. 3, 2026); *Tiquiram-Us v. Dilley Immigr. Processing Ctr.*, 2026 WL 2242499, at *1 (W.D. Tex. July 31, 2026). Moreover, Petitioner's *Accardi* Doctrine challenge differs from the due process challenge brought by the petitioners in *Sosnava Rodriguez*. *See Rodriguez v. Ortega*, 180 F.4th 702, 711 (5th Cir. 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026).

habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citations omitted).

## **Discussion**

The Court considers Petitioner's claim that her current detention is unlawful under the *Accardi* Doctrine and the Fifth Amendment.[2] (Dkt. 1 at 9–11.) Petitioner alleges that ICE Directive 11032.4 prevents her detention as a postpartum and nursing individual and requires routine custody evaluations. (Dkt. 1 at 8–14.) Petitioner argues that Respondents have failed to comply with their

---

[2] As an initial matter, the Court finds that it has jurisdiction to hear Petitioner's claim challenging the lawfulness of her 8 U.S.C. § 1225(b)(2) detention by ICE under the *Accardi* Doctrine and the Fifth Amendment. *See generally Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 789–90 (S.D. Tex. 2026) (evaluating the Court's jurisdiction to hear the petitioner's constitutional challenge to his detention under 8 U.S.C. § 1225(b)(2)); *Strunin v. Garcia*, 827 F. Supp. 3d 976, 983–84 (S.D. Tex. 2026) (same); *see also Pham v. Bondi*, 2026 WL 969962, at *5–6 (S.D. Tex. Jan. 9, 2026) (finding the court had jurisdiction to consider the petitioner's challenge to his detention after the revocation of his release without due process and in violation of agency regulations).

own internal procedures. (*Id.*) In order to decide Petitioner's claim, the Court first evaluates whether the Directive applies to Petitioner before analyzing whether Respondents violated their internal procedures and prejudiced Petitioner. Finding that Respondents violated Petitioner's rights, the Court then turns to the appropriate remedy.

## I. ICE Directive 11032.4 Applies to Petitioner as a Postpartum and Nursing Individual

ICE Directive 11032.4 states that generally "ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist." ICE Directive 11032.4: *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals*, at 1 (July 1, 2021) (hereinafter "ICE Directive 11032.4"). The Directive defines the "postpartum period" as "a one-year period immediately after an individual gives birth to their child" and defines "nursing" as, "regardless of the passage of time since childbirth, the act of an individual breastfeeding a child." *Id.* at 3.

Here, Petitioner is a postpartum and nursing individual under the Directive's definitions. Petitioner alleges she is within the one-year postpartum period because she gave birth to her daughter on February 17, 2026, and she was a breastfeeding mother at the time of her arrest in March of 2026. (Dkt. 1 at 10.) Respondents argue that Petitioner has not established that she gave birth on this date because her evidence does not include a "birth certificate, delivery record, neonatal medical record, or other contemporaneous documentation corroborating the alleged February 17, 2026, birth." (Dkt. 9 at 8.) Respondents further argue that Petitioner has not submitted evidence that she is presently breastfeeding. (*Id.*) In reply, Petitioner submitted various medical records from Valley Baptist Medical Center in Brownsville, Texas, that document the infant's birth

through a cesarean section performed on February 17, 2026, Petitioner's postpartum care, and the physician's notation that the infant is breast feeding.[3] (Dkt. 11 at 2–3, Attach. 1.)[4] The Court finds that these records sufficiently establish that Petitioner is within the one-year postpartum period and was nursing her infant shortly before she was taken into custody.

Because Petitioner is a postpartum and nursing individual under the Directive's definitions, Respondents were required to comply with the Directive when detaining Petitioner in June of 2026.

**II. Respondents Have Failed to Comply with Their Internal Procedures**

Having found that the Directive applies to Petitioner, the Court turns to whether Respondents failed to comply with their internal procedures and prejudiced Petitioner. The Supreme Court has held that executive agencies are bound by their own rules and regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Gulf States Mfrs., Inc. v. Nat'l Labor Relations Bd.*, 579 F.2d 1298, 1308 (5th Cir. 1978) (citations omitted) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid."); *see also Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 755 (S.D. Tex. 2008) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959); *Accardi,* 347 U.S. 260; *Bridges v. Wixon,* 326 U.S. 135 (1945) ("Where individual interests are implicated, the Due Process clause requires than an executive agency adhere to the standards by which it professes its action to be judged.")).

[3] The Court notes that Petitioner also claims she submitted these medical records to Respondents through the immigration court, on or about July 9, 2026. (Dkt. 11 at 2.)

[4] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

Moreover, the *Accardi* Doctrine is not limited to formal agency regulations but extends to internal rules and procedures affecting individual rights. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (affirming reversal of an agency decision to deny public assistance made in violation of an internal agency manual); *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991) (The *Accardi* Doctrine's "ambit is not limited to rules attaining the status of formal regulations."); *see also Shigwedha v. Acuna*, 2026 WL 2211525, at *1 (W.D. La. July 31, 2026) ("Under the *Accardi* doctrine, agencies must abide by their own regulations or internal procedures. Federal courts can set aside agency actions when they do not comply with their own directives." (citing *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007))). However, in some contexts, courts have held that a violation of agency procedures alone does not necessarily warrant relief unless there is a showing of prejudice. *See Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 177 (3d Cir. 2010) (citations omitted) (explaining that "[c]ourts have taken diverse approaches to reconciling the tension between [*Am. Farm Lines v. Black Ball Freight Service,* 397 U.S. 532 (1970) in which the Supreme Court first required a showing of prejudice] and *Accardi*, some imposing explicit prejudice requirements"); *see, e.g.*, *Shave v. Apfel*, 238 F.3d 592, 596–97 (5th Cir. 2001) (requiring a showing of prejudice in the context of evaluating the social security administration's violation of its own internal procedures); *McKoy v. Fox*, 587 F. App'x. 802, 804–05 (5th Cir. 2014) (citations omitted) (requiring that a prisoner "establish that he was prejudiced by the constitutional violation to obtain habeas relief").

Here, the Directive mandates that ICE generally should not detain individuals known to be postpartum or nursing "unless release is prohibited by law or exceptional circumstances exist." ICE Directive 11032.4 at 1. Exceptional circumstances to detain an individual that is postpartum or nursing exist only when "(1) the individual poses national security concerns; or (2) the

individual poses an imminent risk of death, violence, or physical harm to any individual." *Id.* at 3. In the "very limited circumstances" where detention is necessary, ICE must monitor general health and well-being of the individual and conduct weekly custody re-evaluations. *Id.* at 1, 8.

The Court finds that Respondents have failed to comply with the Directive. First, Respondents incorrectly claim that Petitioner's "release is prohibited by law because 8 U.S.C. § 1225(b)(2)(A) mandates detention of covered applicants for admission." (Dkt. 9 at 7) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297–303 (2018); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502 (5th Cir. 2026)). However, Petitioner's detention is not governed by any of the Directive's listed detention authorities that may prohibit release. *See* ICE Directive 11032.4 at 7 (citing Immigration and Nationality Act (INA) §§ 235(b) (noncitizens in the expedited removal process); 236(c) (certain criminal and terrorist noncitizens during pending removal proceedings); 241(a)(2) (certain criminal and terrorist noncitizens during the 90-day removal period). While Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), the applicable regulations contemplate legal release mechanisms such as parole for urgent humanitarian reasons or significant public benefit. *See* 8 C.F.R. §§ 212.5(b), 235.3(c)(1). Therefore, Petitioner's release is not prohibited by law, and Respondents have not shown that any extraordinary circumstances necessitate detention. *See de Leon v. Ladwig*, 2026 WL 19095, at *7–8 (W.D. La. Jan. 2, 2026) (rejecting the Government's argument that the petitioner's release from detention under 8 U.S.C. § 1225(b)(2) was prohibited by law because the petitioner was eligible for parole under 8 C.F.R. §§ 212.5(b) and 235.3(c)(1)). Second, nothing in the record indicates compliance with the Directive's requirement that ICE conduct custody reevaluations at least weekly to determine whether continued detention is appropriate and required. (*See* Dkt. 11 at 7–9); *see also* ICE Directive 11032.4 at 8. Indeed, Respondents do not provide any evidence of the custody

reevaluations or allege that they have complied with the Directive's requirements. (*See generally* Dkt. 9.)

Finding that Respondents have failed to provide Petitioner with the procedures that she is entitled to under the Directive, the Court turns to whether Petitioner was prejudiced. The Directive's requirements that the Government refrain from detaining postpartum and nursing individuals except in "very limited circumstances" and provide at least weekly custody redeterminations in the instances where detention is necessary guards against the arbitrary deprivation of Petitioner's liberty. *See Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 800–02 (M.D. La. 2026) (holding that the Government's failure to follow its own regulations in revoking supervised release was prejudicial where the regulations provide important procedural safeguards intended to protect the fundamental right to liberty). Furthermore, given the abrupt nature of Petitioner's detention, she did not have any opportunity to secure care for her then five-week-old infant. (*See* Dkt. 1 at 11); *see also Ortiz-Garcia v. Warden of Webb County Detention Center*, Civ. No. 5:26-cv-00399, Dkt. No. 14 at 12 (S.D. Tex. July 15, 2026) ("Petitioner was not given any opportunity to make arrangements or secure care for any dependents . . . critically, he also faces the ongoing harm of abruptly being separated from his family."). While Petitioner remains in detention, she is also prevented from breastfeeding, restoring the mother-child bond, and protecting her infant. *See id.*

For these reasons, the Court finds that Respondents failure to follow their own internal procedures prejudices Petitioner and violates the *Accardi* Doctrine and the Fifth Amendment. *See San Juan v. Mullin*, 2026 WL 1962582, at *2 (W.D. La. July 7, 2026) ("Respondents have failed to demonstrate their adherence to the Directive required by the *Accardi* doctrine."); *Shigwedha*, 2026 WL 2211525, at *2 ("ICE has violated the *Accardi* doctrine and not followed the

requirements of ICE Directive 11032.4."); *de Leon*, 2026 WL 19095, at *8 ("Respondents have not demonstrated how Petitioner de Leon's continued detention is consistent with the *Accardi* doctrine given the existence of ICE Directive 11032.4.").

**III. The Appropriate Remedy is Immediate Release**

Having found that Respondents violated Petitioner's rights when detaining her, the Court turns to the question of what relief is warranted. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Accordingly, the Court finds that where Respondents unlawfully detained Petitioner, the appropriate relief is Petitioner's immediate release from detention. *Rodriguez Romero*, 2026 WL 321437, at *17 (collecting cases) ("As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) ("Because [Petitioner] is 'in custody in violation of the . . . laws . . . of the United States,' he is entitled to habeas relief."). The Court agrees with the other district courts in this Circuit and across the country that have granted release on the grounds that ICE violated the *Accardi* Doctrine by failing to comply with the Directive. *See San Juan*, 2026 WL 1962582, at *2; *Shigwedha*, 2026 WL 2211525, at *1–2; *Banegas v. Bondi*, 2026 WL 473162, at *2 (W.D. Wis. Feb. 19, 2026); *Morales Lopez v. Maples*, 2026 WL 1433970, at *5 (S.D. Ind. May 21, 2026); *Mirlena J.F. v. Chestnut*, 2026 WL 2283104, at *7 (E.D. Cal. Aug. 8, 2026).

**<u>Conclusion</u>**

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Request for Order to Show Cause, (Dkt. 1), is **GRANTED**. Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. 3), is **DISMISSED**

**AS MOOT**. Respondents' Response to Petition for Writ of Habeas Corpus and Response to Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction and Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

1. Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release **on or before Tuesday, August 25, 2026**.

2. Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than three hours** prior to Petitioner's release from custody.

3. Respondents must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention.

4. If Petitioner is redetained, all applicable regulations and procedures must be followed, including ICE Directive 11032.4.

IT IS SO ORDERED.

SIGNED this August 21, 2026.

Diana Saldaña
United States District Judge